ELLIS, Judge:
This is a suit for damages for personal injuries brought by Cecil Reed against The Kroger Company. Plaintiff alleges that he was injured when he slipped and fell while in defendant’s store. After trial on the merits, judgment was rendered dismissing plaintiff’s suit and he has appealed.
The facts of the case were summarized by the trial judge as follows:
“A preponderance of the evidence establishes that:
“Plaintiff slipped and fell while a customer in the grocery department of defendant’s self service store on Wednesday, June 20th, 1979, in the late afternoon, while walking past the baby food display on his way to the front of the store. He fell as a result of stepping on a broken jar of baby food on the floor in the aisle or on some of the contents of the jar. He did not see it before his fall, nor did his brother-in-law who accompanied him. Plaintiff felt something under his foot as he slipped and fell. After his fall, he found glass and baby food on the back of his right arm, shoulder and on his back. This was verified by his brother-in-law. The store manager came to the scene and observed plaintiff on the floor and the broken jar near his right shoulder.
“How the broken jar came to be on the floor is unknown.
“The store is open from 7:00 AM to 10:00 PM. A cleanup crew cleans every aisle and corridor in the store between 5:00 AM and 8:00 AM daily. From opening until 1:30 PM two stock boys are assigned to the grocery department and their duties are to stock shelves and keep the aisles clean. At 1:30 PM seven stock boys come on duty in the grocery department and work there until closing. Their duties likewise are to stock shelves and keep the aisles clean. The manager or assistant manager occasionally (although on no regular schedule) walk the corridors of the store and look down the aisles for obstructions or foreign items, but this is a very cursory examination. At midday a utility clerk sweeps every aisle. No stock boys are regularly furnished mops or brooms for cleanup although these are available at the back of the store.
*1108 “On the day of the accident, Thomas Harmon was the stock boy who worked from 1:30 PM to 10:00 PM on the aisle where plaintiff fell. His usual routine, (and the one he followed on the date of the accident), requires him to begin work at 1:30 PM; take a break for a few minutes between 3:30 and 4:00 PM; work until 5:30 PM at which time he takes his lunch break; and return to work until a last break sometime between 7:30 and 9:00 PM depending on how much of his work he has accomplished. In the late afternoon of the day of the accident he stocked the cake mix display which is directly across the aisle from the baby food display where the accident happened. When he finished, and in preparation for his lunch break, he checked the entire aisle by walking its length and looking at the floor of the aisle and the shelves. He is positive that the floor was free of foreign objects of any kind. This occurred five to ten minutes before plaintiff’s accident. Mr. Harmon’s testimony is in no way impeached or discredited. He is still employed by the defendant but that, of itself, does not overcome his forthright and positive demeanor.”
The trial judge held that, since there was “positive and uncontradicted evidence” that the aisle was clean and free from foreign objects five to ten minutes before plaintiff’s accident, that the inspection and elean-up procedures usually followed by Kroger were immaterial. He stated:
“The question becomes whether or not this storekeeper in this particular incident with a positive inspection five to ten minutes before the accident in question which inspection established that the floor of this aisle was free of foreign substances has exercised reasonable care under the circumstances to keep the aisles in a safe condition for plaintiff. It is my opinion that it has. To require more, would, in effect, make the storekeeper the insurer of this customer’s safety.
“In light of the view of this particular case which I have taken, it is not necessary to determine whether the general cleanup and inspection procedures were or were not adequate, for, even if inadequate, and the negligence of the defendant thereby inferred or presumed, such negligence could not be the proximate cause of this accident due to the fact that the floor was inspected and clean five to ten minutes before the accident.”
In this court, plaintiff argues that the trial judge’s ruling is erroneous, and that he failed to follow the law applicable to cases of this type.
Since the Supreme Court case of Kavlich v. Kramer, 315 So.2d 282 (La.1975), a plaintiff in a self-service store slip and fall case need only prove that he was injured in an accident resulting from the unsafe condition of the floor or the aisle. A presumption then arises that the storekeeper was negligent in permitting the unsafe condition to exist, and the burden of proof shifts to the storekeeper to prove that he was free of negligence; that is, that the unsafe condition existed without actual or constructive notice to the storekeeper.
In most cases, the storekeeper attempts to discharge this burden by showing that his inspection and clean-up procedures are of such a nature as to insure reasonably that the floors of the aisles are free of substances and objects which might cause a customer to slip and fall. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Givens v. National Tea Co., 347 So.2d 1194 (La.App. 1st Cir. 1977).
In this case, the storekeeper proved by evidence satisfactory to the trial judge that the unsafe condition had existed for less than five or ten minutes. The record is devoid of any evidence that the storekeeper had actual notice of the condition, and the lapse of time between the inspection by the stock boy and the occurrence of the accident is not long enough so that the storekeeper should have discovered the dangerous condition. By proving that the aisle was clear five to ten minutes before the accident, we find that defendant has borne its burden of proof.
The judgment appealed from is therefore affirmed, at plaintiff’s cost.
AFFIRMED.